UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MELISSA GOLDEN,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, [1]

        Defendant.

CASE NO. 2:16-CV-01558 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 13, 14).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action need be taken, pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was assaulted at the age of 11 by the boyfriend of her aunt. AR. 335. This continued until plaintiff was 13, "when her great-grandmother caught him." *Id*. The perpetrator "was convicted and [sentenced to] 7-11 years," and indicated that he "wanted to try to see [plaintiff] when he got out." *Id*. Although plaintiff received her GED at the age of 16, the last grade she completed in high school was 10th grade. *Id.*

In high school, plaintiff began to experience post-traumatic stress disorder ("PTSD") symptoms, where she is hypervigilant and suffers from flashbacks, nightmares, self-harming behavior, and panic attacks. *Id.*

Although the ALJ found that the opinions from an examining psychologist were based largely on plaintiff's self-reports, the record demonstrates that the psychologist, Dr. McDuffee, performed a mental status examination, on which she relied, and also personally observed various of plaintiff's symptoms, such as her high anxiety. Because the ALJ's finding that the psychologist's opinion was based largely on self-reports is not supported by substantial evidence, and because this is the only reason explicitly relied on by the ALJ for failing to credit fully this medical opinion, this matter is reversed and remanded for further administrative consideration.

BACKGROUND

Plaintiff, MELISSA GOLDEN, was born in 1988 and was 22 years old on the alleged date of disability onset of March 1, 2011, and 24 years old on her protective filing date of May 16, 2013. *See* AR. 176-81. Plaintiff did not complete high school, but did get a GED. AR. 50-51. Plaintiff has some work experience as a cashier, housekeeper/cleaner and child monitor. AR. 43-45.

According to the ALJ, plaintiff has at least the severe impairments of "obesity, disorder of the respiratory system, anxiety disorder, and an effective disorder (20 CFR 416.920(c))." AR. 18.

At the time of the hearing, plaintiff was living in an apartment with her ex-boyfriend. AR. 61-62.

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration. *See* AR. 76, 98. Plaintiff's requested hearing was held before Administrative Law Judge Tom L. Morris ("the ALJ") on February 24, 2015. *See* AR. 33-75. On April 13, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 13-32.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ erred in his weighing of Dr. McDuffee's opinion; and (2) Whether the ALJ erred in assessing plaintiff's allegations and testimony in regard to the severity and limiting effects of her mental impairments. *See* Dkt. 11, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

**(1)   Whether the ALJ erred in his weighing of Dr. McDuffee's opinion.**

Plaintiff contends that the ALJ erred when evaluating the medical opinion of Dr. McDuffee. Dkt. 11, pp. 2-7. Defendant contends that there is no error as the ALJ "reasonably found that Dr. McDuffee's opinions were inconsistent with plaintiff's longitudinal medical history;" and because Dr. McDuffee "relied heavily on plaintiff's reports." Dkt. 13, pp. 10-11 (citations omitted). But, despite defendant's contention, the ALJ did not rely on a finding that Dr. McDuffee's opinions were inconsistent with plaintiff's longitudinal medical history. *See* AR. 25-26. According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196).

Even if the Court were to intuit that the ALJ intended to rely on a finding of inconsistency between Dr. McDuffee's opinions and the treatment record, the ALJ did not even delineate the specific opinions of Dr. McDuffie, much less specify which ones were inconsistent with the record, or which portion of the record they were inconsistent with. Therefore, this potential rationale is not explicitly relied on and is not sufficiently specific.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Regarding the specific opinions of Dr. McDuffee, the ALJ noted only that Dr. McDuffee "opines that the claimant has marked to severe limitations in numerous functional areas . . . ." AR. 25. The ALJ also noted that Dr. McDuffee's opinion was rendered (one month) prior to the protective filing date. AR. 25-26.

Just as "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition," medical evaluations made just before the relevant period of time begins similarly are relevant. *See Smith*, *supra,* 849 F.2d at 1225-26 (collecting cases). The Ninth Circuit in *Smith* concluded that "it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Id.* (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)). It is logical that medical observations suggesting that a claimant suffered from limitations at one point in time are relevant to the question of whether or not the claimant suffered from the same limitations either before or after that

point in time. Although opinions rendered contemporaneously may have greater relevance, such fact does not render medical opinions from a different period of time irrelevant. The medical opinion from Dr. McDuffee that plaintiff suffered from certain limitations about a month prior to May 13, 2013 (the application date) make it more likely than not that she still suffered from such limitations after May 13, 2013. Therefore, to the extent that the ALJ intended to support his failure to credit fully Dr. McDuffee's opinions because they were offered approximately a month prior to the application date, this is not specific and legitimate rationale for failing to credit fully this medical opinion.

This conclusion is buttressed by a relevant federal regulation regarding the responsibility of the Social Security Administration:

> Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 C.F.R. § 416.912(d) (SSI). Plaintiff alleges disability onset on March 1, 2011. AR. 16.

This federal regulation demonstrates that medical opinion evidence provided prior to the period of time for which a claimant's ability to work is addressed can be relevant, even potentially for more than a year prior to the filing of an application. *See id.*

The only reason explicitly relied on by the ALJ for failing to credit fully Dr. McDuffee's opinion is the ALJ's finding that this medical opinion "is based largely on the claimant's self-reporting." AR. 26. However, this finding is not based on substantial evidence in the record as a whole.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides her own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)).

Dr. Victoria McDuffee, Ph.D. examined plaintiff on April 10, 2013. *See* AR. 335-46. When describing her symptoms to Dr. McDuffee, plaintiff indicated that she is "afraid to be out of the house alone . . . . In the last year and a half its worse. I have a hard time going to check my mail." AR. 335. Dr. McDuffee performed a mental status examination, noting, for example, that plaintiff's appearance included poor eye contact and tense psycho motor presentation. AR. 338-44. Dr. McDuffee also noted that plaintiff's attitude and behavior were cooperative, but avoidant and suspicious. AR. 338.

Dr. McDuffee also opined that plaintiff's mood appeared extremely anxious and depressed. *Id*. Dr. McDuffee noted numerous results that were not within normal limits, such as plaintiff's memory, fund of knowledge, concentration, abstract thought, and insight and judgment. AR. 339. She also provided numerous opinions regarding plaintiff's functional limitations, including severe limitations on plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and set realistic goals and plan independently. AR. 337.

Although defendant contends that the ALJ's finding that Dr. McDuffee based her opinions heavily on plaintiff's self-reporting is appropriate because Dr. McDuffee listed quotations from plaintiff in the clinical findings section, Dr. McDuffee also included some of her own observations in this section. For example, when describing plaintiff's anxiety, Dr. McDuffee indicated that plaintiff's anxiety is severe and chronic, noting that she personally observed "visible signs of anxiety - face flushing, chest turning red." AR. 336. In addition, when noting that plaintiff's mental status was not within normal limits, she referenced the mental status examination results/addendum to psychological evaluation. AR. 339. This addendum included results such as "borderline deficient [immediate memory result] suggests attention, concentration, and memory deficits;" plaintiff's inability to recall any objects after a five-minute delay, which Dr. McDuffee

opined "indicate significant memory issues;" inability to perform serial sevens or spell "world" correctly; moderate impairment in abstract reasoning; and marked impairment in practical judgment. AR. 340.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that Dr. McDuffee largely based her opinions on plaintiff's self-reporting is not based on substantial evidence. Therefore, "there is no evidentiary basis for rejecting the opinion." *See Ghanim*, 763 F.3d at 1162 ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion") (citation omitted).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the

patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

The Court concludes that the ALJ erred when failing to credit fully Dr. McDuffee's opinions. The Court also concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

As noted, Dr. McDuffee opined that plaintiff suffered from numerous severe limitations, such as severe limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and complete a normal workday and workweek without interruptions from psychologically-based symptoms. AR. 337. "Severe" is defined on the form filled out by Dr. McDuffee as "the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." *Id*. It is unlikely that any jobs are available in significant numbers in the national economy that could be performed by an individual who cannot perform any of these particular activities in regular competitive employment. Therefore, the Court cannot conclude with confidence that "'no reasonable ALJ, when fully crediting the [opinions from Dr. McDuffee], could have reached a different disability determination.'" *See Marsh*, 792 F.3d at 1173 (quoting *Stout,* 454 F.3d at 1055-56).

### (2) Whether the ALJ erred in assessing plaintiff's testimony and allegations in regard to the severity and limiting effects of her mental impairments.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

However, the Court notes briefly that the ALJ relied heavily on a finding of inconsistent statements by plaintiff when failing to credit fully plaintiff's testimony and allegations. *See* AR. 21-25. However, there are some issues with this finding. For example, the ALJ cites a treatment record to support the ALJ's finding that "treatment records from late 2014 indicate that the claimant reported that her sleep as adequate." AR. 21 (citing AR. 458-78). However, these treatment records reveal mixed reports regarding plaintiff's sleep. Although plaintiff reported that her sleep was okay for one week, these same treatment records reveal at a different point in time that plaintiff reported that she needed to increase her sleep and adhere to a better sleep schedule, and that she was having problems sleeping and was suffering from nightmares (AR. 468). Although it is true that on November 26, 2014, plaintiff reported that her sleep was adequate (AR. 463), in May, 2014, she had reported that her sleep was decreased, she was having problems sleeping, and was suffering from flashbacks and nightmares (AR. 469). Plaintiff apparently was taking her prescribed trazodone as needed for sleep, and while on one occasion, on November 14, 2013, she indicated that her last trazodone was a week prior and that her sleep was okay (AR. 475), on January 17, 2014, plaintiff indicated that she was taking trazodone every other day (AR. 474) and on August 26, 2014, she indicated that she was taking trazodone three times a week (AR. 470). The record appears to be consistent with plaintiff's report that she goes "long hours of no sleep and sometimes sleeping too much." AR. 243.

Similarly, the ALJ repeats multiple times that plaintiff "goes out in public for things that she enjoys like movies, restaurants, and game works indicating adequate social skills to leave her home." *See, e.g.*, AR. 22. However, it is unclear how this is inconsistent with plaintiff's allegations, as she indicated that once in a while she would go to the movies or to game works with her boyfriend, noting that "I'm okay as long as I can see him." *See, e.g.,* AR. 336. Plaintiff indicated that she is "afraid to go out *alone*." AR. 239 (emphasis added). Similarly, the ALJ finds that plaintiff "was unable to explain why this task [of taking the bus to her appointments] was manageable for her but grocery shopping was not." AR. 22. However, it does not appear that plaintiff was asked to explain why she could take the bus to her appointments but not manage grocery shopping alone, and perhaps she would have been able to explain the circumstances if she had been asked. Furthermore, when testifying about riding the bus, plaintiff did provide some explanation for the discrepancy, noting that she has "to stay on the same bus," that her "bus is right in front of [her] apartments," and that she puts her headphones on and looks out the window and does not interact with anyone on the bus. AR. 55.

Whether or not to credit fully plaintiff's allegations and testimony should be evaluated further following remand of this matter.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 19th day of June, 2017.

J. Richard Creatura
United States Magistrate Judge